Davis, P. J.
These cases present indenfcically the same questions and they were for .that reason argued together. The contracts upon which the actions were brought were alike in form and identical in their objects and purposes. They were mere traffic agreements by which the parties arranged for an interchange of business for their mutual benefit and advantage, and stopping with the provisions which effect such interchange, there would seem to be no serious questions of their legality.
The plaintiff company in each case contracted “that it will at all times deliver to the Erie Company for transportation all the freight and passengers, that it can lawfully control or influence, destined to points that can be reached by way of the railroad of the Erie Company, or its connections, and will use its influence to promote the interests and the business of the Erie Company, so far as it can, with proper regard for its own interests. ” And the Erie Company contracted “ that so far as it can, with a proper regard for its own interests, it will use its influence and exercise its control to promote the interests and the business of the plaintiff company.”
And in consideration of the performance of the agreement on the part of the plaintiff company, the Erie Company agreed to make good any deficiencies in the net earnings of that company, to meet the interest upon its present bonded indebtedness from time to time as the same becomes due and payable.
We think there is nothing in these provisions obnoxious to any law of this state.
As collateral security for the performance of its agreement each of the plaintiff companies agrees to cause to_ be deposited with the Erie Company a majority of the capital stock of the plaintiff company, in such manner as shall be required, upon which so long as the management of the plaintiff company shall be satisfactory to it, the Erie Company will give or cause to be given to such representative of ■ the plaintiff company as shall be designated by it the right to vote upon the stock so deposited. And the promise of the Erie Company to make good deficiencies in the net earnings of the plaintiff company, is made upon the condition "that the corporate control of the plaintiff company shall become and remain vested in the Erie Company as above provided.
The only question in the case is whether this provision in regard to the deposit of the stock as security for the performance by the plaintiff company of its contract,_ and the condition that the corporate control of the plaintiff shall in that become and remain vested in *746 the Erie Company are invalid in law, and for that reason the whole contract between the parties is void. It is not contemplated that the plaintiff company shall not continue to carry on its business as a corporation by continuing to operate its railroad, as is its duty as a corporation. On the contrary, it is bound by the contract to do so in order to carry out the provisions to deliver to the Erie Company all freight and passengers that it can lawfully control or influence destined to the points mentioned. This is to be done under its own management and control so long as it performs the contract, but when it fails to perform its contract, then the provision is that the Erie Company may by the exercise of the voting power of the stock deposited as collateral, place in control such a board of management as will perform the agreement. It cannot take the control itself, so that the Erie Company will manage and conduct the business of the corporation, but it can appoint such officers and agents of the plaintiff company as will manage the business of that company as required by its contract. Beyond this, the contract confers no power or control upon the Erie Company over the plaintiff Company, and the power given is purely contingent, and does not appear from anything in the case even to have been exercised, nor does it appear that any necessity for its exercise has arisen.
It is averred by the plaintiff companies that the contract was performed on their part by the deposit of a majority of the stocks required, and that the performance of the contract by both parties was entered upon and continued until the defendant company saw fit to repudiate the same.
The question arising upon these facts is an interesting one, by no means free from doubt, but we are inclined to the opinion, inasmuch as no decision is brought to our notice upon a precisely similar state of facts, that this arrangement is not per se void, because in violation of law. If there be no question but that contracts between railway companies for the arrangement of their intermutual traffic may lawfully be made by which one company may bind itself to pay stipulated ■ sums or assume obligations to pay interest upon the bonds of the other, it is not clearly perceived why the company that undertakes so to pay may not secure the performance of the contract by arrangements which will enable it, in case of breach of the agreement, to appoint such officers or agents for the defaulting company as shall secure performance.
If the question be considered as purely one of ultra vires, then it is obvious that the defendant is in no condition to avail itself of that objection. It entered upon and enjoyed the benefit of the contract for a long period of time, .and it is too late to assert that the contract was void, because it *747 had no power to secure its performance in the manner stipulated in the instrument. Neither company could assert such a defense after entering upon and enjoying the benefits of the contract. To avoid the agreement, the defendant must be able to assert that it was void in law as against public policy, or by reason of conflict with some provision of law, statutory or otherwise.
We are of the opinion that the judgment should be reversed and a new trial granted, with costs to abide event.
Daniels and Brady, JJ., concur.